This is an action to recover damages resulting from personal injuries suffered by the plaintiff, and caused, as alleged in the complaint, by the negligence of the defendants.
The plaintiff is a physician engaged in the practice of his profession in the city of Gastonia, N.C. Since 1924, he has occupied offices in a building located in the city of Gastonia, known as the Third Trust Company Building. He entered into possession of said offices in 1924, as a tenant of the Third Trust Company, which was at that time the owner of said building.
On or about 29 April, 1929, the Commercial Bank and Trust Company, a corporation organized and doing business as a banking corporation under the laws of the State of North Carolina, suspended its business. The Corporation Commission of North Carolina took possession of all the assets of said company for purposes of liquidation. Since said date, the said Corporation Commission, acting through the defendant, John Mitchell, chief State Bank Examiner, and its successor, the defendant, Gurney P. Hood, Commissioner of Banks, have been, successively, engaged in the liquidation of said Commercial Bank and Trust Company, as provided by statute.
Among the assets of said Commercial Bank and Trust Company, which came into the possession of the said Corporation Commission, were certain equities in the office building owned by the Third Trust Company. The said office building was encumbered by a deed of trust *Page 132 
executed by the Third Trust Building to secure certain bonds which had been issued by said Third Trust Company, and which were then outstanding. The deed of trust was foreclosed, and the Corporation Commission, as authorized by a decree of the Superior Court of Gaston County, purchased said building at a sale made on 14 February, 1930. In accordance with said decree, the said office building was conveyed by the trustee in said deed of trust, to the defendant, John Mitchell, chief State Bank Examiner, by deed dated 25 February, 1930. Since the date of said deed, the defendant, John Mitchell, chief State Bank Examiner, has held said office building as an asset of the Commercial Bank and Trust Company of Gastonia. The said office building is now under the control and in the possession of the defendant, Gurney P. Hood, Commissioner of Banks, who as successor of the Corporation Commission is now engaged in the liquidation of the Commercial Bank and Trust Company.
The allegations of the complaint in which the plaintiff states the cause of action on which he seeks to recover of the defendants in this action, are as follows:
"14. That the plaintiff has continuously been a tenant in the building aforesaid since early in 1924, and became a tenant of the defendants by renting rooms in the said Third Trust Company Building as offices for the use and conduct of his profession, and that the plaintiff has occupied, and still occupies offices in said building for the purpose aforesaid, and has continuously been and is now a tenant of said defendants since the purchase by defendants as aforesaid and the execution of the aforesaid deed of conveyance on or about 25 February, 1930.
15. That among other things, the defendants by their contract of rental agreement were to render competent elevator service to the plaintiff and plaintiff's clientele in reaching plaintiff's offices from the ground or main floor of the building to the floor on which said offices are located.
16. That the defendants in lieu of keeping an employee at all times for the operation of elevators in said building, furnished the plaintiff an instrument or key to unlock the doors of the elevator shaft, so that in case of requiring the use of said elevator, when the defendants' operator was off duty, he might unlock the door and use the elevator; and that the defendants instructed the plaintiff as to the operation of said elevator.
17. That the defendants, their agents and servants, represented to the plaintiff that said elevator was equipped with the latest and most approved type of safety devices, one of which said safety devices was to prevent said door or doors of the shaft from being unlocked by the *Page 133 
instrument or key furnished plaintiff by defendants unless the car or elevator was at the floor of said building where it was desired to use the said elevator, and further represented that it was impossible to unlock said door or doors unless the elevator was in place at said particular door or doors.
18. That relying upon the representations aforesaid, and believing that said safety device or devices were in proper and safe working order, the plaintiff on Sunday night, 6 April, 1930, desiring to enter his offices on the fifth floor of said building, entered the lobby or hallway of defendants' said building, inserted the key in the lock of said elevator door, and opened the same, and stepped into what he reasonably expected to be the car or elevator, but the said car or elevator was not there, when plaintiff stepped into the elevator shaft, and the plaintiff was thrown or hurled fourteen feet or more into the basement floor below; that defendants had carelessly and negligently allowed and permitted the said safety device on the door of said elevator shaft to get out of proper working order, and, as before alleged, the plaintiff was thrown or hurled a distance of fourteen feet or more; that plaintiff suffered the following injuries, to wit: a fractured knee-cap on the right knee, causing a part of the knee cap to be broken loose and float below the joint; badly bruised and lacerated left elbow joint; three bruises on the lower jaw, leaving a permanent scar on plaintiff's chin, four teeth knocked out or crushed; the back of the head and neck of plaintiff severely bruised, causing paralysis of the anterior group of muscles in the right thigh, and from the aforesaid injuries and the shock sustained by reason of the fall, this plaintiff was unconscious for about three days and incurred considerable hospital and medical expense.
19. That at the time aforesaid, when the plaintiff went into said building for the purpose of opening said elevator and going into his offices, as aforesaid, it was necessary for him to go into the lobby or hallway of said building, which led to the elevator or elevator shaft; that the defendants did not maintain or have any light or method of illuminating said lobby or hallway and particularly at the time when this plaintiff entered the same as aforesaid; that it was dark in said hallway or lobby; that the only way or method provided by the defendants for lighting or illuminating said elevator at said time or times, was the lighting apparatus or fixture within the elevator; that this could not be reached or turned on so as to give light, until after the door of the said elevator shaft had been opened, and the switch or light in said elevator turned on after entrance into said elevator; that at the time aforesaid, when the plaintiff entered said lobby or hallway, the same was dark, and the only way the plaintiff had of reaching the light *Page 134 
was to open said door of the elevator shaft and go into the elevator and turn or switch on the light, as aforesaid, all of which the plaintiff intended to do as was his usual custom when entering the elevator at night when the same was dark.
20. That the aforesaid injuries of plaintiff were wholly due to the carelessness and negligence of defendants in that, as before alleged, said elevator was furnished and was then under the supervision and control of the said defendants or their agents or employees; that said safety device on the door had been allowed or permitted by carelessness and negligence of the defendants to become defective and out of order; the failure of defendants to give to the plaintiff any notice or knowledge that the same was defective or out of order; that the carelessness and negligence of the defendants in failing to provide any or sufficient light in said hallway or lobby prevented the plaintiff from seeing said elevator door shaft and elevator; that the carelessness and negligence of the defendants, as aforesaid, was the sole and proximate cause of plaintiff's injuries as hereinbefore alleged.
21. That by reason of the injuries, as hereinbefore alleged, due to the carelessness and negligence of the defendants, the plaintiff suffered greatly in body and mind, and has been put to great hospital and medical expense, and as he is informed and believes, he will continue to suffer in body and mind, and plaintiff has been informed and believes that the injury to his knee and leg will be permanent, and his earnings will be materially lessened and decreased by his inability to practice his profession with his customary skill and energy; that by reason of the carelessness and negligence of the defendants, as hereinbefore alleged, and the injuries sustained by plaintiff, as hereinbefore set out, the plaintiff has been damaged in the sum of $50,000."
The defendants demurred to the complaint on the ground:
1. That no cause of action is alleged in the complaint against the defendant, John Mitchell, individually.
2. That defendants other than John Mitchell, individually, are agencies of the State of North Carolina, and for that reason no action can be maintained by the plaintiff against said defendants to recover damages for the injuries sustained by the plaintiff, as alleged in the complaint.
3. That the allegations of the complaint show that plaintiff, by his own negligence, contributed to his injuries, and for that reason no cause of action is alleged in the complaint against the defendants.
The demurrer was sustained as to the defendant, John Mitchell, individually, and was overruled as to the other defendants.
The defendants other than John Mitchell, individually, appealed to the Supreme Court. *Page 135 
There was no error in the judgment overruling the demurrer as to all the defendants other than John Mitchell, individually. No cause of action is stated in the complaint as to this defendant. The action was properly dismissed as to him.
This is not an action against the State of North Carolina, or against the appealing defendants as agencies of the State. The State of North Carolina, in its capacity as a sovereign, has no interest, direct or remote, in the cause of action alleged in the complaint. For that reason,Carpenter v. R. R., 184 N.C. 400, 114 S.E. 693, has no application in the instant case.
The Corporation Commission of North Carolina, at the date of the injuries suffered by plaintiff, was, and the defendant, Gurney P. Hood, Commissioner of Banks, as the successor of said Commission, is now in possession of the assets of the Commercial Bank and Trust Company, of Gastonia, N.C. for purposes of liquidation as provided by statute. The said Commission was, and the said defendant is now, a statutory receiver of the said Commercial Bank and Trust Company, with all the rights and liabilities of a receiver appointed by a court of competent jurisdiction.Blades v. Hood, Commissioner of Banks, 203 N.C. 56, 164 S.E. 823; In reTrust Co., 198 N.C. 783, 153 S.E. 452. A recovery in this action by the plaintiff will be paid by the defendant, Gurney P. Hood, Commissioner of Banks out of the assets in his hands as statutory receiver of the Commercial Bank and Trust Company, and not otherwise.
It cannot be held as a matter of law that on the facts alleged in the complaint, the plaintiff by his own negligence contributed to his injuries as alleged in the complaint. Ordinarily, where there is evidence tending to support this defense, the evidence must be submitted to the jury. It is rarely the case that the Court can hold as a matter of law, upon the allegations of the complaint, or upon evidence offered by the plaintiff, that plaintiff, who has been injured by the negligence of the defendant, cannot recover damages resulting from such injuries, because by his own negligence he contributed to his injuries. It is sufficient to say that this is not such a case. The decision in Scott v. Telegraph Company,198 N.C. 795, 153 S.E. 413, was made on a fact situation altogether different from that in the instant case. The judgment is
Affirmed. *Page 136