**COMMISSIONER OF LABOR OF NORTH CAROLINA, Plaintiff,**

v.

**DILLARD'S, INC., Defendant.**

**No. 1:99CV00398.**

United States District Court, M.D. North Carolina.

Feb. 2, 2000.

Victoria Lewis Voight, Raleigh, NC, for Plaintiff.

Jacob J. Modla, Charlotte, NC, for Defendant.

*MEMORANDUM OPINION*

BEATY, District Judge.

This case is before the Court on a Motion for Remand [Document # 3] filed on June 14, 1999, by Plaintiff, the Commissioner of Labor of the State of North Carolina (the "Commissioner"). Defendant, Dillard's, Inc. ("Dillard's") filed a response in opposition to the motion for remand. For the reasons that follow, Plaintiff's Motion for Remand is hereby GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, the Commissioner, filed the present action on December 28, 1998 in the Forest County North Carolina Superior Court pursuant to the Retaliatory Employment Discrimination Act of North Carolina ("REDA"), N.C.Gen.Stat. § 95–240 *et seq.* Compliance with the statute is enforced by the Workplace Retaliatory Discrimination Division of the North Carolina Department of Labor ("WORD"). The basis of the claim in question is that Dillard's violated REDA by engaging in acts of retaliation

and discrimination against an employee because she exercised her rights under REDA to file a claim pursuant to the Workers' Compensation Act of Chapter 97 of the North Carolina General Statutes. Specifically, Beverly Cleaver ("Cleaver"), a sales clerk for Dillard's suffered an on the job injury on June 5, 1996. Thereafter, she filed a workers' compensation claim for benefits due to the injury which had kept her out of work for a period of time. Cleaver's injury prevented her from returning as a sales clerk, a position in which she earned hourly wages of $13.55. Dillard's, instead, assigned Cleaver to a customer service position and lowered her salary to an hourly wage of $9.00. Cleaver could not perform her duties as a customer service representative because of the restrictions her physician placed on her activities. Cleaver alleged that Dillard's did not attempt to make any modification so as to allow her to perform the duties of the customer service position. Dillard's ultimately offered Cleaver another job as a sales support/sales secretary, which she accepted. However, Dillard's never actually placed her in that position. Due to further problems related to her injury, Cleaver was out of work for a considerable period of time. During this period of her leave, Samuel Moorier; a North Carolina resident, acting as Dillard's' operation manager, sent Cleaver a letter on July 17, 1997 notifying her that her employment with Dillard's had been terminated. The reason given for the termination was that she had already used the maximum of six months leave of absence and was not eligible for any more.

As a result of Dillard's actions, on July 25, 1997, Cleaver filed a complaint with the Department of Labor on the basis that Dillard's had retaliated and discriminated against her in violation of REDA because she filed a workers' compensation claim. In particular, Cleaver asserted that Dillard's had retaliated and discriminated against her by placing her in a position that did not meet her doctor's restrictions, refusing to transfer her to the sales support/sales secretary position she had been offered, and terminating her while she was on a leave of absence for work related injuries. After undertaking an investigation, WORD, the enforcement division of the Department of Labor, determined that there was a reasonable basis to believe that Dillard's had committed the violations as alleged by Plaintiff. When the Department of Labor's efforts of informal conciliation between the parties failed, a Notice of Conciliation Failure was mailed to Dillard's on October 9, 1998. The Commissioner's Complaint does not indicate that a right-to-sue letter was issued to Cleaver. Instead, it is alleged that on December 28, 1998, the Commissioner, pursuant to N.C.Gen.Stat. § 95–240, et seq., filed a civil action in the Forsyth County Superior Court of the State of North Carolina against Dillard's and Samuel Moorer, individually and in his official capacity. The Commissioner also requested a jury trial. The Commissioner's prayer for relief requested an injunction against Dillard's to prevent continuing violations of REDA. In addition, as authorized by N.C.Gen.Stat. § 95–243, the Commissioner requested statutory and general damages that would inure to the benefit of Cleaver. On February 12, 1999, Dillard's filed an answer to the Complaint and a motion to dismiss the individual Defendant, Samuel Moorer from the Complaint. It is further alleged that on or about May 17, 1999, Judge Clarence W. Carter of the Forsyth County Superior Court granted Defendant's motion to dismiss Samuel Moorer from the case. As a result of the dismissal of Samuel Moorer from the case, Dillard's, pursuant to 28 U.S.C. § 1441(a), filed a Notice of Removal of this matter to this Court.

## II. STANDARD OF REVIEW

The motion before the Court is Plaintiff's Motion to Remand this civil action which was brought in state court on a claim filed pursuant to a state statutory authority. Defendant, however, filed a notice of removal of the case to the United

States District Court for the Middle District of North Carolina. Generally, such actions originally brought in state courts are properly removable only if the federal district court would have had original jurisdiction over the claim because it includes for matters involving federal questions or there is diversity jurisdiction. Specifically, removal of actions to federal court of actions originally brought in state court is governed 28 U.S.C. § 1441. In pertinent part, § 1441 provides as follows:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*

28 U.S.C. § 1441(a), (b) (emphasis added). Defendant contends that diversity jurisdiction exists because the real party in interest in this case is not the Commissioner of Labor but rather it is Cleaver, who filed the Complaint with the Department of Labor against Dillard's. Plaintiff disagrees and contends that the Commissioner of Labor is the real party in interest in this matter. Plaintiff contends that its Motion for Remand should be granted because the presence of the Commission of Labor defeats complete diversity in this case. The Court will address the arguments raised by both Plaintiff and Defendant.

## III. DIVERSITY JURISDICTION AS GROUNDS FOR REMOVAL

■ The Court elects to address first Plaintiff's contention as to the status of the Commissioner of Labor in this case. In this instance, it is undisputed that the REDA action filed in the Forsyth County Superior Court of North Carolina does not directly raise any federal questions under either the Constitution, treaties or any federal statutes of which this court would have original jurisdiction. Therefore, jurisdiction for removal purposes, if it exists, must be based on diversity of citizenship as recognized above in 28 U.S.C. § 1441(b) and as provided for in 28 U.S.C. § 1332 which, in pertinent part, states that:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

28 U.S.C. § 1332(a)(1).[1] However, "the burden of establishing federal jurisdiction is placed upon the party seeking removal. Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." *Turnamics, Inc. v. Advanced Envirotech Sys.*, 54 F.Supp.2d 581, 584 (W.D.N.C.1999) (quoting *Mulcahey v. Columbia Organic Chem. Co. Inc.*, 29 F.3d 148, 151 (4th Cir.1994)). A presumption in favor of remand is necessary to prevent a

---

1. Plaintiff raises a question as to whether Defendant can comply with the requirement of showing that Plaintiff's claim on behalf of Ms. Beverly Cleaver would include damages approaching the minimum of $75,000 required for showing diversity jurisdiction. Because the Court will decide this case on the citizenship requirement for diversity jurisdiction, the court elects not to address the issue of the monetary prerequisite for diversity jurisdiction.

federal court from reaching the merits of a pending motion in a removed case where subject matter jurisdiction for federal courts may be lacking, thereby depriving a state court of its rights under the Constitution to resolve controversies in its own courts. *See University of South Alabama v. American Tobacco Co.,* 168 F.3d 405 (11th Cir.1999). Defendant, nevertheless, contends that there is subject matter jurisdiction based upon diversity jurisdiction under 28 U.S.C. § 1332(a)(1). However, for this Court to have jurisdiction on the basis of diversity, there must be complete diversity of state or foreign citizenship between each plaintiff and all defendants. *See Owen Equip. and Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Plaintiff contends that complete diversity does not exist in this case because the Commissioner represents the state and the Commissioner's presence in the case cannot be considered as a means of establishing diversity jurisdiction. *See West Virginia v. Haynes,* 348 F.Supp. 1374 (S.D.W.Va.1972); *Roberson v. Dale,* 464 F.Supp. 680, 686 (M.D.N.C. 1979) ("It is ... settled law that a federal court has no jurisdiction under 28 U.S.C. § 1332 to hear a case where the defendant is merely an alter ego of a state [and therefore not a citizen for diversity purposes].")*; County of Harris v. Ideal Cement Co.,* 290 F.Supp. 956 (S.D.Tex.1968); 13 Charles Alan Wright, *et al. Federal Practice and Procedure* § 3524 at 140–47 (2d ed.1984); 13B *Id.* § 3602 at 366–67, and § 3623 at 593–96.

■ Defendant accepts this principle to the extent that it states that "[p]laintiff is correct that a State is not considered a citizen for determining diversity jurisdic-

tion; nor is a State agency, when acting as an alter ego of the State considered a citizen when determining diversity of citizenship." (Def. Response in Opposition to Plt.'s Mot. To Remand at 2.) [2] Defendant's position does not appear to question that the Commissioner of Labor, as the executive officer of the North Carolina Department of Labor, is in fact the alter ego of the state in this instance. Defendant's main argument appears to be more that Cleaver and not the Commissioner of Labor is the real party in interest in this case. This is a matter that the Court will subsequently address. However, for the moment, it is well that Defendant should not question the alter ego status of the Commissioner of Labor in representing the state's interest in this case because in stating the general rule, the Supreme Court of North Carolina has held that "[a]n action against a Commission or Board created by Statute as an agency of the State where the interest or rights of the State are directly affected is in fact an action against the State." *Prudential Ins. Co. v. Powell,* 217 N.C. 495, 500, 8 S.E.2d 619, 622 (1940). The court has also said that a "suit against an agency which represents the state in action and liability, to control such action and liability, is in effect a suit against the state." *Vinson v. O'Berry,* 209 N.C. 287, 287, 183 S.E. 423, 423 (1936) (citations omitted).

■ The General Assembly, in Chapter 95 of the General Statutes of North Carolina, which created the Department of Labor and designated the Commissioner of Labor as its executive officer, recognized the Department of Labor as such an agency with authority to act on behalf of the state with respect to labor matters.[3] The

---

2. The Court also need not address Plaintiff's Eleventh Amendment argument since it turns on precisely the same considerations as the non-constitutional argument that there is no diversity of citizenship, that is, the question of whether the state is a citizen or the real party in interest for diversity purposes. *See* 13 *Federal Practice and Procedure* § 3524 at 146–47.

3. N.C.Gen.Stat. § 95–1 provides:

> A Department of Labor is hereby created and established. The duties of said Department shall be exercised and discharged under the supervision and direction of a commissioner, to be known as the Commissioner of Labor.
>
> North Carolina General Statute § 95–4, which establishes the authority, powers and duties of the Commissioner of Labor, states:

Secretary of State was similarly organized to represent the state with respect to corporate matters and as such was recognized as the alter ego of the state in the case of *Eure v. NVF Co.,* 481 F.Supp. 639, 641 (E.D.N.C.1979). In *Eure,* the court noted that the Secretary of State's presence in the case, in his official or individual capacity, could not be considered in determining the diversity question primarily because "he brought this action pursuant to express statutory authority in his official capacity as Secretary of State." *Id.* Just like the Secretary of State in *Eure,* the Commissioner of Labor brought the present action pursuant to the expressed statutory authority, in this case, N.C.Gen.Stat. § 95–240, *et seq.*[4] The Court, therefore, finds that the Commissioner of Labor in carrying out his statutory duties on behalf of the state is the alter ego of the state and as such cannot be considered a citizen for diversity purposes.

## IV. STATE AS THE REAL PARTY IN INTEREST FOR PURPOSES OF DIVERSITY

█ Defendant contends that although the Commissioner of Labor may represent the state as its alter ego, the question remains as to whether the state is the real party in interest for purposes of determining diversity jurisdiction. Defendant asserts that despite the language of the diversity statute, regarding the requirement of having citizens of different states, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Turnamics,* 54 F.Supp.2d

at 583. Defendant further contends that for purposes of determining diversity, the Commissioner of Labor, even if found to be the alter ego of the state, cannot be considered the real party in interest in this case because of the nature of the claim being asserted on behalf of Cleaver. In support of its argument, Dillard's principally cites *Wynn v. Philip Morris, Inc.,* 51 F.Supp.2d 1232, 1250 (N.D.Ala.1999), for the position that "the mere presence of the [state] on the pleadings as a plaintiff is not alone sufficient to divest the court of diversity of jurisdiction, if the State is listed merely as a nominal plaintiff." *See also Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 460, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("Federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."). Defendant also makes reference to *Ramada Inns, Inc. v. Rosemount Memorial Park Ass'n.,* 598 F.2d 1303, 1306 (3d Cir.1979), which states that the fact that "a state agency, or its officers may have been named as parties [defendants] in an action is not dispositive of this question because such a determination can only be derived from the 'essential nature and effect of the proceeding.'" *See also Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389, 394 (1945) (holding that the nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding). Defendant's reference to each of these cases in support of its position is inapposite because in each, the respective courts determined, based upon the state's substantive law that

The Commissioner of Labor shall be the exclusive and administrative head of the Department of Labor. In addition to the other powers and duties conferred upon the Commissioner of Labor by this Article, the said Commissioner shall have the authority and be charged with the duty:

.    .    .    .    .

(2) To make such rules and regulations with reference to the work of the Department and of the several divisions thereof as shall be necessary to properly carry

out the duties imposed upon the said Commissioner and the work of the Department; such rules and regulations to be made subject to the approval of the Governor.

4. In terms of their authority to act on behalf of the state, the similarity between the Secretary of State and the Commissioner of Labor is emphasized by the reference to the two positions being elected in the same manner as set out in N.C.Gen.Stat. § 95–2.

the state's interest in the case was nominal and served a mere formality. The respective courts also concluded in each case that the state was not the real party in interest for diversity purposes. For example, *Ramada* involved a contract dispute between Ramada Inns, a Delaware Corporation, and Rosemount Memorial Park, a nonsectarian cemetery located in Newark and Elizabeth, New Jersey. Ramada Inns sought cancellation of a contract to purchase vacant property to build a motor in and return of a substantial cash deposit. The state of New Jersey was joined in the case as a party defendant pursuant to state statute, N.J.Stat. § 8A:3–21, which provided that the Attorney General shall be a necessary and indispensable party to any litigation involving or pertaining to a cemetery company, such as Rosemount. The court determined that the state of New Jersey was not a party to the contract, and that any issues which affected the state of New Jersey were separate and completely distinct from the contract dispute between Ramada and Rosemount. Therefore, the court determined that New Jersey could not be considered a real party in interest in the case. *Ramada*, 598 F.2d at 1308.

In addition, with respect to *Wynn v. Philip Morris, Inc.,* the court there determined that the state of Alabama was merely a formal party to the action filed on its behalf by Wynn and that the state had no authority to intervene or control Wynn's actions against the defendants. *Wynn v. Philip Morris, Inc.* , 51 F.Supp.2d 1232, 1255. As such, the court determined that Alabama was not the real party in interest based upon the substantive state law. *Id.* It is the opinion of this Court that the *Wynn* case and the *Ramada* case, both of which are based upon the substantive law of their respective states, have no relevance to the court's decision in this case, particularly since their interest and authority in the proceeding involved in each case, is totally unlike the significant interest and authority afforded the Commissioner of Labor under REDA. The Court,

therefore, finds that Defendant's brief single sentence reference to these cases to be distinguishable and not controlling.

Defendant further contends that the question of whether a state is the real party in interest will turn on factors widely variant from case to case. *Pennsylvania Turnpike Commission v. Welsh,* 188 F.2d 447, 450 (3d Cir.1951). While Defendant's assertion is correct that the court must consider the question of who is the real party in interest on a case by case basis, the Court must start its analysis of this matter. with a consideration of Rule 17(a) of the Federal Rules of Civil Procedure, which, like Rule 17(a) of the North Carolina Rules of Civil Procedure, requires that "every action must be prosecuted in the name of the real party in interest." Generally speaking, "the meaning and object of the real party in interest principle embodied in Rule 17 is that the action must be brought by a person who possesses the right to enforce the claim and who has a significant interest in the litigation." *Virginia Elec. and Power Co. v. Westinghouse Elec. Corp.,* 485 F.2d 78, 83 (4th Cir.1973). The Fourth Circuit stated that "whether a plaintiff is entitled to enforce the. asserted right is determined according to the substantive law. In a diversity action such as this one, the governing substantive law is the law of the state." *Id.* Defendant contends that it is Cleaver who is the real party in interest for diversity purposes and not the Commissioner of Labor because it was Cleaver who initially made the complaint against Dillard's. Plaintiff disagrees. The Court, therefore, must consider the question of whether the Commissioner of Labor or Cleaver is the real party in interest for diversity purposes under North Carolina law. *See Crowell v. Chapman,* 306 N.C. 540, 543–44, 293 S.E.2d 767, 770 (1982).

Pursuant to North Carolina law, "a real party in interest is a party who is benefited or injured by the judgment in the case [and who] by substantive law has the legal

right to enforce the claim in question." *Reliance Ins. Co. v. Walker,* 33 N.C.App. 15, 234 S.E.2d 206, *rev. denied,* 293 N.C. 159, 236 S.E.2d 704 (1977) (citations and quotations omitted). *See also Carolina First Nat'l Bank v. Douglas Gallery of Homes, Ltd.,* 68 N.C.App. 246, 314 S.E.2d 801 (1984). Put another way, "the 'real party in interest' is the party who, by substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Richards v. Reed,* 611 F.2d 545, 546 (5th Cir.1980) (quoting *United States v. 936.71 Acres of Land,* 418 F.2d 551, 556 (5th Cir.1969)). The applicable state substantive law that applies for the purpose of determining the real party in interest in this case is REDA, which recognized a civil action to address violations such as those that have been asserted against Dillard's.[5] The Court looks to this statute to determine the existence of both requirements for establishing who is the real party in interest. The first requirement is that the person claiming to be the real party in interest must have significant interest in the litigation. The second is that the real party in interest be one who by substantive law has the legal right to enforce the claim in question. With respect to identifying one who has a significant interest in the litigation, it is certainly true that the state of North Carolina, by and through the Commission of Labor exercising the power of enforcement, has an interest in addressing any and all violations of REDA. This significant interest of the state, which can be considered for purpose of determining diversity jurisdiction, was recognized by the North Carolina General Assembly which by enacting REDA, sought to remedy unsafe and unlawful workplace conditions by providing employees with a mechanism to report these violations without being punished for doing so. *Commissioner of Labor v. House of Raeford Farms, Inc.,* 124 N.C.App. 349, 477 S.E.2d 230 (1996) disc. rev. denied, 347 N.C. 347, 492 S.E.2d 354 (1997).

The Commissioner of Labor's status as the real party in interest is even clearer upon a consideration of the second factor which requires that the real party in interest must by substantive law have the legal right to enforce the claim in question. REDA, in N.C.Gen.Stat. § 95–242 establishes who has the right to enforce an action for violation of the Act. In pertinent part, § 95–242 provides that:

(a) An employee allegedly aggrieved by a violation of N.C.Gen.Stat. § 95–241 may file a written complaint with the Commissioner of Labor alleging the violation. The complaint shall be filed within 180 days of the alleged violation. Within 20 days following receipt of the complaint, the Commissioner shall forward a copy of the complaint to the person alleged to have committed the violation and shall initiate an investigation. If the Commissioner determines after the investigation that there is not reasonable cause to believe that the allegation is true, the Commissioner shall dismiss the complaint, promptly notify the employee and the respondent, and issue a right-to-sue letter to the employee that will enable the employee to bring a civil action pursuant to N.C.Gen.Stat. § 95–243. If the Commissioner determines after investigation that there is reasonable cause to believe that the allegation is true, the Commissioner shall attempt to eliminate the alleged violation by informal methods which may consist of conference, conciliation, and

---

**5.** The version of N.C.Gen.Stat. § 95–241 which was in effect at the time of Cleaver's Complaint provided that:

(a) No person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to do any of the following:

(1) File a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to any of the following:

a. Chapter 97 of the General Statutes [The Workers' Compensation Act].

persuasion. The Commissioner shall make a determination as soon as possible and, in any event, not later than 90 days after the filing of the complaint. (b) If the Commissioner is unable to resolve the alleged violation through the informal methods, the Commissioner shall notify the parties in writing that conciliation efforts have failed. The Commissioner shall then either file a civil action on behalf of the employee pursuant to N.C.Gen.Stat. § 95–243 or issue a right-to-sue letter to the employee enabling the employee to bring a civil action pursuant to N.C.Gen.Stat. § 95–243.

(c) An employee may make a written request to the Commissioner for a right-to-sue letter after 180 days following the filing of a complaint if the Commissioner has not issued a notice of conciliation failure and has not commenced an action pursuant to N.C.Gen.Stat. § 95–242.

N.C.Gen.Stat. § 95–242.

Thus according to § 95–242(b), once the employee and the violator have been notified that conciliation efforts have failed, it is the Commissioner that has the unconditional right to file a civil action pursuant to § 95–243. Alternatively, the employee may be enabled to initiate a civil action only on the condition that the Commissioner has issued a right-to-sue letter to the employee. However, while the Commissioner may issue a right-to-sue letter, he is under no obligation to do so. This is particularly true where the Commissioner has already determined that a reasonable basis exists to bring a civil action and has filed such a law suit upon notifying the employee and the violator that conciliation efforts have failed. The Commissioner under these circumstances has the complete authority to act pursuant to REDA and bring a civil action against the violator.

On the other hand, an employee, such as Cleaver, does not have a legal right to enforce the claim without first receiving a right-to-sue letter from the Commissioner of Labor. This conditional right of an employee to bring such an action was made a part of the statute itself as shown in § 95–243(e) which states that an employee may only bring an action under this section when he has been issue a right-to-sue letter by the Commissioner. The Commissioner has exercised his discretion and issued a right-to-sue letter on other occasions. *See, e.g. Telesca v. SAS Institute, Inc.,* — N.C.App. ——, 516 S.E.2d 397 (1999). The Court, therefore, has no reason to question why the Commissioner, in this particular case, exercised his legal right under the statute to initiate this civil action and not issue a right-to-sue letter to Cleaver. To the extent the decision not to issue Cleaver a right-to-sue letter was made, pursuant to REDA, only the Commissioner of Labor has the enforceable right to bring the lawsuit in this case. Therefore, only the Commissioner is the real party in interest in this case.

Defendant, nevertheless, argues that the Court, for purpose of determining diversity, should consider who is the real beneficiary based upon the relief requested by the Commissioner in the Complaint's prayer for relief. The Court notes again that the statute clearly indicates that the Commissioner, in exercising his legal right to enforce the claim, can pursue the same types of damages which Cleaver would have been able to claim if she had been issued a right-to-sue letter. N.C.Gen.Stat. § 95–243(c). The fact that the Commissioner is allowed to pursue these particular remedies on behalf of Cleaver also serves another very important objective of the real party in interest rule, which is to protect Dillard's, in this instance, from any subsequent actions related to this matter by binding both the Commissioner and Cleaver, who has notice of these proceedings, to the adjudication of the litigated matter. *See Virginia Elec. and Power Co.,* 485 F.2d at 84 (holding that Rule 17 is intended, in part, to protect defendants from multiple actions by allowing a real party in interest to bring suit for complete recovery even though a portion of the ben-

efit of the suit may flow to a third party). More importantly, however, the Court notes that the Commissioner is also allowed to protect the state's interest by obtaining an injunction against any further violation of REDA by Dillard's. The fact that Cleaver may benefit from the Commissioner's action does not lessen the Commissioner's role as the real party in interest based upon the significance of the state's interest in this matter and the existence of the Commissioner's legal right to bring the law suit in this matter.

## V. CONCLUSION

The Court, therefore, concludes that complete diversity does not exist in this case because the Commissioner of Labor cannot be considered as a citizen for purpose of determining diversity. This determination is consistent with the Court's findings that the Commissioner is both the alter ego of the state and the real party in interest in this matter. The Court further concludes that there is no diversity of citizenship for purposes of 28 U.S.C. §§ 1332 and 1441(a). Therefore, this case is not properly before the Court and is hereby ORDERED remanded to the North Carolina Forsyth County Superior Court for further proceedings pursuant to REDA. It is further ORDERED that Defendant shall pay reasonable cost, including attorney fees associated with Defendant's removal of this matter to this court. Plaintiff shall within thirty (30) days of this ORDER AND JUDGMENT submit a bill of costs for its reasonable expenses incurred in connection with this matter. An Order and Judgment in accordance with this Memorandum Opinion shall be filed contemporaneously herewith.